STATE OF CONNECTICUT

COUNTY OF NEW HAVEN

FILED 3:18 mj 267(JGM)

: ss: New Haven, Connecticut

Date: February 27, 2018

2018 FEB 27  P 2: 47
U.S. DISTRICT COURT
NEW HAVEN, CT.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

I, Michael Ahearn, a Special Agent with the U.S. Department of Health and Human Services, Office of Inspector General (HHS-OIG), having been duly sworn, state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with HHS-OIG, where I have been employed for over seven years. Before becoming an HHS-OIG Special Agent, I was employed as a criminal prosecutor in Massachusetts for approximately seven years.

2. I have a Bachelor's degree in English Literature from the College of the Holy Cross in Worcester, Massachusetts and a Juris Doctor degree from Northeastern University School of Law in Boston, Massachusetts. I have received extensive training at the Federal Law Enforcement Training Center in Glynco, Georgia.

3. As an HHS-OIG Special Agent, I am responsible for investigating allegations of fraud against the various programs under HHS's jurisdiction, including the Medicare and Medicaid programs. I have participated in numerous investigations involving those programs and have assisted with search and arrest warrants.

4. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, U.S.C. §666 in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18. I am the co-case agent responsible



11.     Malone used his laptop to access ACT's accounting system, Sage, where he tracked, recorded, reported, and managed ACT's business and financial records. Malone was an administrator of the system with full and complete access to Sage. Sage was used to record funds received, manage purchases and accounts payable, generate checks, record credit and debit card activity, and produce financial reports. Sage could be accessed remotely as well.

12.     Malone was responsible for submitting payroll for ACT. ACT used Paychex and later changed their payroll vendor to ADP. Malone submitted ACT's payroll to ADP and Paychex through these companies secure online portals.

13.     During an interview with CEO Masters, Malone advised that he completed and maintained any financial reporting required for any grants that ACT received in spreadsheets maintained on his laptop.

14.     In November of 2016, ACT's CEO, Donald Masters, was reviewing payroll records in order to calculate the amount of a pay raise that he intended to give a valued scientist on ACT's staff. Masters would have normally asked Malone for the information, but Malone was out of the office on a personal trip. In his review of the payroll records, Masters discovered for the first time that Malone was paying himself approximately $660,000 in salary, far above the approximate $281,000 salary that he was entitled to receive.

15.     Upon further review of the payroll records and other financial records, Masters discovered that Malone had been writing manual checks to himself for several years that were disguised as bonuses, that he had been giving himself unauthorized additional salary payments, that he had been using the ACT credit card for personal expenditures and that he had been making unauthorized donations to an organization that Malone personally supported. Upon making this discovery, Masters spoke to Malone on December 9, 2016. During this



conversation, Malone stated that since Masters did not object to his payroll, he decided that he could set his own compensation at whatever level he wanted whenever he wanted. Malone also told Masters that he was trying to earn as much compensation as possible during the current year (2016) in order to significantly reduce his compensation in the following year (2017), so that the private school where he planned to send his children to in 2017 would provide him with financial aid based on his lower compensation level.

16. At the end of this meeting, Masters placed Malone on paid administrative leave and asked Malone to return all equipment ACT owned to the company. Malone returned an iPad as well as ACT's Dell M3800 laptop.

17. Masters then had a forensic audit conducted on ACT's accounting records. This audit revealed that Malone embezzled over $950,000 of ACT's money from at least 2012 to 2016.

18. Masters also had a forensic examination conducted on Malone's ACT issued Dell M3800 laptop. In order to perform this analysis, ACT hired a forensic accounting firm who had another company forensically image the hard drive for their review.

19. The forensic examination of the device revealed that Malone kept a "private file" on the device. This "private file" contained Malone's personal budget and listed an asset chart. This asset chart claimed assets like electronics, art, jewelry and other items that Masters believes Malone bought with the money that he embezzled from ACT.

20. In an interview with Malone on July 20, 2017, Malone advised he was one of the founders of ACT in 2005 and the former CEO until Masters was hired in late 2008 or early 2009. Malone became the CFO of the company once Masters was hired as the CEO. Malone acknowledged that he was aware of the checks that were written on the ACT bank account to



him because he, Malone, personally wrote the checks to himself. Malone claimed being one of the founders of ACT, once serving as the CEO, and later becoming the CFO of ACT gave him the authority to set his own salary and increase his salary without consulting the CEO, the investors, or Board members. Malone stated that when he wanted to give himself a pay raise, he just did. Malone did not ask or advise anyone of his salary increases. Malone could not recall how many salary increases he gave to himself, but claimed the $500,000 in checks he wrote out to himself were his way of giving himself incremental pay increases.

## CONCLUSION

21.     For the reasons set forth herein, I submit that there is probable cause to believe, and I do believe, that Thomas Malone has committed violations of Title 18 U.S.C. §666, Theft or bribery concerning programs receiving Federal funds. I respectfully request the issuance of the requested criminal complaint and arrest warrant.



## REQUEST FOR SEALING

22.    I further request that this affidavit, the requested criminal complaint and the requested warrant be placed under seal by the Court until the time of the initial appearance in order to ensure the safety and well-being of law enforcement officers and individuals cooperating with law enforcement.

Respectfully submitted,

*M. Ahearn*
Michael Ahearn
Special Agent
U.S. Department of Health and Human Services, Office of Inspector General

Subscribed and sworn to before me on __Feb 27__, 2018

/s/ Joan G. Margolis
HON. JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF CONNECTICUT